20-43-41, Carolyn Valentine, CPA versus Health and Wellness Lifestyle Clubs, LLC. Oral argument not to exceed 15 minutes per side. Mr. Witalski for the plaintiff appellate. You're welcome. No problem, thank you. Good morning. May it please the court, my name is Rich Witalski and I represent Carolyn Valentine, the appellant. I'd like to reserve five minutes for rebuttal. Ms. Valentine contends that the trial court erred in its application of the law and in its findings of fact. Just as a way of background, the claims against Ms. Valentine are basically for work she performed as an accountant. And they were asserted in Stark County Common Pleas Court and then were asserted in FINRA in San Diego. And then as a result of our seeking a preliminary injunction to prevent the FINRA from going forward, they were asserted again in the district court. By way of background, we had some additional developments after the appeal was scheduled. I had gotten sick and we had to reschedule it. But the trial occurred in Stark County when Ms. Valentine got a verdict in her favor on all the claims that were asserted against her, which were all tort-related claims. No contract claims were asserted. It was fraud, negligence, negligent misrepresentation, promissory estoppel, which is a non-contract-based claim, and professional negligence. Subsequent to the filing of the appeal, we also got a request from the court for clarification about the Federal Arbitration Act. And our response to that was that we do not believe the Federal Arbitration Act, which has a specific provision, which precludes appeals of denials of preliminary injunctions, because we do not have a contract. We do not have a contract and we do not have an arbitration provision that exists between Ms. Valentine and HWLC. We believe, in addition, that the judgment in the Stark County matter is essentially a res judicata on all the claims that were asserted. There were some additional claims asserted in federal court for securities violation, but they were argued in a common pleas court and there was no finding of any fraud. In the federal court, has that matter been resolved also, I thought? No, it has not. It's pending subject resolution of this appeal. Okay. And going back, when you were talking about the different places you had been, you said, as I heard you, that these claims by the, well, call them the clubs, were asserted in federal district court. Are you referring to this matter? Because I thought this matter only arose because of your motion for an injunction. Have they asserted their claims in this case? There has been asserted counterclaims for the same, I believe, essentially the same causes of action as asserted elsewhere. Counterclaims, okay. That was my question. Thank you. Although they did have additional claims. They had the securities claims that were asserted in federal court that were not asserted in Stark County. And again, asserted in this case number. In this litigation, correct. And also, I believe, in the FINRA. Our argument is that there is no arbitration agreement between HWLC and Ms. Valentine. Did the FINRA arbitration go forward? It has been stayed pending a resolution of this appeal. But they too have also been informed of the Stark County. Stayed by FINRA itself? Stayed by FINRA, correct. Our argument is that FINRA doesn't apply here because Ms. Valentine never had an advisory relationship with HWLC. From the very beginning, we were adverse to HWLC. We were engaged for years as John Ranieri's CPA and did accounting work for him for years. We did compilations. We never did any attest work. We did tax returns and we did some accounting work for him. And Mr. Ranieri became aged. He got to be, I think, 82. And he decided he was going to sell the golf courses. He did so without our involvement. The HWLC entered into a letter of intent and into a purchase agreement before we had any substantive involvement. He asked us to look at it a couple days before it was executed. Ms. Valentine said you probably asked him because she was the CPA. But she never had any involvement with the transaction and certainly never made any information available to HWLC prior. So the deal never went through. The transaction failed. HWLC tried repeatedly to get financing and was unable to do so. And they were unable to do so because the deal didn't make any sense. It didn't make sense economically. So it fell through. And what happened was the court has found that basically we satisfied the customer relationship with Valentine, even though we were adverse to Valentine, and that because of that we were subject to FINRA. Now, Valentine is a FINRA advisor. But she was never a FINRA advisor to Ranieri and was never a FINRA advisor to HWLC. FINRA simply just didn't come into play in this transaction. But she got sued and she was sued in FINRA. So our argument is that, look, there's no evidence at all that supports a conclusion that they were customers, that HWLC was a customer. She never had any agreement to provide services. She was introduced to them as Ranieri's accountant. She was told repeatedly that she would not do any attest work for HWLC in the context of the work because she had never done any attest work for Ranieri. All the historical information was basically compiled. And when you compile the information or prepare tax returns, you know verification. But there was never any indication that any of the information she provided was in any way erroneous. The information provided was given to Paulette Cray, who was a CPA engaged by HWLC. For about six weeks, she came in and went through everything and never had any issue. And to this date, there's never been anything shown that there's been a misrepresentation or an error in anything that Carol and Valentine did. So our argument is that, look, we have not agreed to arbitrate. The Supreme Court has made it very clear that you are not obligated to arbitrate unless you've agreed to arbitrate. And certainly the Federal Arbitration Act has put some teeth into it, but you still need an agreement to arbitrate, and you still need an arbitration provision for the FAA to apply. And we have neither here. Can I take you back to the question about jurisdiction? Sure. You just told us this case is about arbitration, this Federal case is about arbitration. And there's pretty specific rules about when you can and can't appeal to our court in cases where there's a decision about arbitration. Sure. And your argument that you stated earlier was that there's no arbitration contract here, so somehow Section 16B doesn't apply to this appeal? Well, it does provide the Arbitration Act provides to commercial written contracts with arbitration provisions. I mean, that's Section 1, I believe, of the Federal Arbitration Act. There's an arbitration going on. There is not. The arbitration has not proceeded. We've objected to proceeding with the arbitration. Well, there's been an arbitration filed. An arbitration was attempted to be initiated, yes. Come on. I'm sorry, I didn't understand. What were you trying to enjoin if there's some kind of arbitration proceeding that started? We don't know how far along, right? I mean, the point of your motion was to enjoin that proceeding. Correct. So there's something there you're trying to enjoin. Correct. That thing is an arbitration. Correct. And you're telling me that this is not, so the order in front of us is not an order refusing to enjoin an arbitration subject to this title? Well, there's a provision, a federal statute that provides for immediate appeal of a denial of an arbitration of an interlocutory. It's 28 U.S.C. 1292A1, which provides an interlocutory appeal for an arbitration. For? In order of compelling arbitration. That's not what it says. This is the other way around. Or denying arbitration. I think it's a rule, the statute applies both ways. It's not for denying arbitration, but the section that we've been talking about, 16.4, 16.b.4, an appeal may not be taken from an interlocutory order refusing to enjoin an arbitration. But that's under the FAA. That's an FAA provision. Our argument is we don't apply it. FAA doesn't apply to us because we do not have an arbitration agreement between HWLC and Valentine. There's no agreement, there's no arbitration provision that exists between them. But that all rests on it not being a customer, right? Correct. Right, exactly. That was my point, that the evidence establishes that they were not a customer. We provided no FINRA services, and it also has to arise in the performance of FINRA-related services. But at what point does this become a question? All right, there are two different questions. One is, is it a question for the arbitrators? And the other is whether we have jurisdiction to appeal, I mean to hear the appeal. But if you're dealing with issues like is it in the course of the business, I mean, aren't those the type of decisions that these FINRA arbitrators make? Only if it qualifies, only if it's a FINRA relationship. You don't agree by becoming a FINRA representative or becoming a FINRA-licensed professional, you don't agree to arbitrate anything and everything that comes down the pike with whoever comes in and makes a demand for arbitration. You are, by signing up to be an arbitrator. The customer issue is what's key, right? Correct, the customer relationship. The customer issue is a threshold issue that tells you whether the FAA even applies. Because, yes, you can have what's regarded as a contract for arbitration arising out of the FINRA relationship, but you have to have that relationship. You have to have a FINRA relationship. They had no account. And usually that question of arbitrability is for courts, not for arbitrators. Always. Well, not always. You can, by contract, you can. If you agree to submit the arbitrability to arbitration. In this case, you haven't. So the question is under what theory, then, should this court enforce that when the district court didn't? Are we simply saying the district court was wrong to not find no arbitrability? We believe the district court erred by finding a customer relationship when none existed, finding that the arbitration process is an administrative remedy, which it is not, and also by finding that the arbitrability of the dispute is legitimately subject to arbitration. If I generally, then, in this particular case, hypothetically agree with you for that construct, that you're sort of right, what do we make of the provision of 16b-4? Because if you're right in this case, in every case where the person is claiming no arbitrability, no contract, they would be able to, we would be able to entertain the appeal. So under that theory, what's the meaning of 16b-4? What of it is left? You have to find that 16b-4 applies to the dispute. But if the reason that you say it doesn't apply is because you're not a customer. No, I say it doesn't apply because it's not, we don't have a written agreement, which is required under 16, and we don't have an arbitration provision in an agreement. But I don't think you can get very far with saying you don't have a written agreement because that would say that anybody who doesn't have a written arbitration agreement isn't covered under FINRA. Well, no, but if you're a customer, you are. But we have the combination of not having an agreement and not being a customer. They strike out on both, two strikes. I mean, you can't satisfy the cut. According to our argument, the customer. You lost on those issues. You lost on those issues. Right, I did. But the facts, if you look at the facts. You lost on those issues about whether an arbitration should proceed or not. Those issues are all about whether there should be an arbitration or not in this case. That's correct. And you've now appealed the denial of injunction to enjoin the arbitration proceeding, which you say shouldn't happen. Correct. I don't see how that doesn't fall squarely under 16b-4. And to punctuate the point, Section 16a would give you the right to appeal if there was a final decision with respect to the arbitration. But how do you find the Federal Arbitration Act applies when there's no contract and there's no agreement to arbitrate between HWLC and Valentine? Two reasons. One, there's an arbitration pending. But that filed inappropriately, and that's why we're seeking to stop it. Yes, and then you filed a federal lawsuit trying to join the improper arbitration, which you're making arguments about arbitration and whether arbitration should proceed. This case is about, this appeal is about arbitration. Whether it's right.  Whether it's a right way. There are legal issues there, but all the illegal issues tie back to whether the arbitration should go forward. And Congress, I think through the FAA, is sort of making the point that we favor arbitration. And so unless, let me finish. I saw you grimace. But unless there's a final order from the district court, we want the arbitration to proceed. That's why we sort of barred an interlocutory appeal in this context. Because the FAA favors arbitration. We want the arbitration proceeding to take place. Then you can go to federal court and you can do your final challenge to it. There will be a final order and you can come back to us. And maybe then we'll say there shouldn't have been arbitration to begin with. But that seems to be the scheme that Congress, not me, Congress laid out. But that's not the case because it's not, FAA does not provide for that. It provides for enforcement in that manner of written contracts containing an arbitration provision. If you have a written contract. So the language that is subject to this title, effectively, the question is you might say correctly subject. It is subject to the title in the sense that somebody has filed a piece of paper invoking the FAA, right? Correct. I mean, that's how we've got, you know, an arbitration that has stayed but is underway. So does subject to this title mean formally brought under the FAA? Or does it mean brought under the FAA in a way that it ought to be? Well, I think you have to do it the way, if it's not, if FAA arbitration is initiated improperly, I think the only remedy is to go to district court and seek an injunction to stop it. That part makes sense. So I'm with you to that point. But then, why does 16b4 say what it says? Because at first reading, it would seem to say, you know, the title is invoked. There is an arbitrator. This guy has come in and explained to a federal judge why it shouldn't be. And right or wrong, the federal judge went the other way. And b4 seems to say that something is not appealable. So what should it apply to if it doesn't apply to this one? If you and I enter into an agreement and we have a contract, and you invoke arbitration, and I say, well, there's no arbitration provision. It's not enforceable. You have to have an arbitration provision. You have to have both to get to, now, you can go ahead and initiate an arbitration, and my effort would be to stop it, which is what effectively we've done. But FAA applies to, it doesn't apply to FINRA arbitrations. There's not one case that's cited here that is cited as an FAA arbitration that's affected by. Is there a case that says the opposite? Pardon me? Is there a case that says what you said? Well, I don't think there's any cases at all because I don't think FINRA applies. FAA doesn't apply to FINRA. FINRA is a, by agreement, I enter into a relationship with FINRA, a regulatory relationship. As part of that, I agree that if my customers get into a claim, they can bring an arbitration claim against me. How do we know which arbitrations fall under the FAA and which don't? What's your bright line rule for, I mean, there's lots of different kinds of arbitrations. Well, you read the definition in the statute. Somebody agrees to arbitration, sometimes there's a contract. You read the definition in the arbitration. It says interstate contracts with an arbitration provision. It's pretty clear. So you're saying no FINRA arbitrations. Pardon me? You're saying that no FINRA arbitrations fall under the FAA. FAA, that's correct. Unless you have an agreement with them, you can agree. If I'm a FINRA representative and I agree with you that we'll go to FINRA, you know, then we have a FINRA arbitration. We have a consent. We have an agreement to proceed to arbitrate a specific dispute. But if you're not a customer, you have no right to drag me into FINRA. But inside a customer because you're starting to confuse. I'm starting to get confused as to what your position is. I understand your argument regarding them not being a customer. But I thought I also heard you say that FINRA arbitrations in general are not arbitrations that fall under the FAA. That's correct because there's no written contract and there's no agreement to arbitrate with that particular individual. The only thing that brings you in is if you fall under FINRA and you're a customer. Then you're subject to FINRA. The second part, isn't there considered to be a contract between your client and the regulatory board? Isn't that sort of considered to be a contractual relationship and that's where the arbitration arises from? Certainly, we've agreed that we would arbitrate with customers, with FINRA, but not with non-customers. But there is a quasi-contract or contract between your client and the regulatory body that includes an arbitration provision. And that's what's been invoked here, I think, by your friend on the other side of an arbitration. And you're saying it doesn't apply, but I don't know how the ruling that happened below isn't a ruling with respect to an arbitration. It is subject to an arbitration, but not subject to FAA arbitration. Okay, counsel. So, Judge Boggs sort of, I think, tried to direct you here. I just want to make sure you understand the question in case you have a better answer to it. Okay. You're absolutely correct that you have to be a customer and you also have to satisfy some other provisions to fall within the arbitration requirement under FINRA. And it's absolutely proper once a FINRA arbitration has been instituted to go to the district court and ask for it to be stayed if you feel that you are not covered by that because the person isn't a customer. It is a separate question whether an order denying the stay is an appealable order. And one of the arguments you would make to the district judge is that this is not an arbitration that falls within the FAA because there's no relationship that gives rise to a contract. But the appellate provision is explicit and says that you cannot appeal an order denying arbitration under the statute. So, as Judge Boggs put it, you can say, well, you determine whether it's correctly arbitrable, whether the district court was correct in denying it, or there's just a blanket prohibition on appealing those types of orders with the understanding that after the case is resolved, there will be an appeal of right. And that Congress made the judgment that we're going to have it stopped at the district court level. If something is blatantly un-arbitrable, the district courts will grant the stay and that will be the end of it. And if it's questionable, we're going to make the district court the gatekeeper. The district court will decide. And once the district court decides, you're going to go through the process and then come back on appeal. And so what is your best argument that that's not what was intended? Well, my best argument is one under 28 U.S.C. 1292A1, appellate court jurisdiction on appeal from interlocutory order of a court denying an injunction. That's the basis on our jurisdiction. And the FAA, which we contend, does not apply because it's not a written contract. It's not, it doesn't apply, the prohibition on the appeal does not apply because the FAA does not apply. 28 U.S.C. The FAA, I mean, one argument is the FAA supersedes the specific governs the general. And we've said that in other cases. Certainly it could if it were. Well, I thought, I mean, just to go back to my prior question, I thought you're saying there's no contract to the FAA. And I thought that there was a contract, not between the two parties here, but between your client and the regulatory body. That is a contract that includes an arbitration provision, and that's part of the case of how that should be interpreted. True, but we are arguing. I mean, just your point, your earlier point about the FAA definition was that it only covers contracts. We've identified a contract. Written contracts with the party that's arbitrating. Well, that's a little gloss. I mean, isn't the question whether the contract between your client and the regulatory body would allow for this kind of arbitration? If they were a customer, absolutely. If they were a customer, we would. To figure out whether there's an arbitration, you have to interpret that contract and the arbitration provision in that contract. Your Honor, I agree that if they were a customer, if HWLC was a customer in regards to securities, in regards to the FINRA license. To figure out whether they're a customer, don't we have to interpret the contract and the arbitration provision? You do need to understand the nature of customer to understand the scope of FINRA jurisdiction. I mean, you can't, you don't arbitrate with non-customers unless you agree formally. Okay. Okay. Thank you. You'll have your full rebuttal. Thank you. Good morning, Your Honors. Mike Stabnicki for Health and Wellness. We've all heard the phrase, don't make a federal case out of it. Here we are. There was a FINRA arbitration filed. They then made a federal case out of it, lost in federal court, and then made a federal appeal out of the federal case to boot. The decision here from Judge Pearson was a well-written, detailed decision. We had to go through, I think it was three days of... The best argument seems to be that FINRA is not covered by the Federal Arbitration Act? False. Okay. Why is it false? FINRA is the governing body for the SEC. The SEC falls under the Federal Arbitration Act, as does every other federal regulatory body. I don't know of any exception that fits what he's saying. Well, FINRA is quasi-public. It's not fully, right? Well, correct. It's the administrative arbitratable arm of the SEC. Do you agree there has to be a contract? I mean, he sort of said that Reiser falls under the contract. He read the definition. I think he read the definition. I'm not sure what it was, but it was something from the FAA about arbitrability. I disagree with his reading, and I disagree with the concept. Judge Riedler, you hit it on the head. It's not that my client signed an arbitration agreement with his client. You agree it didn't happen? Yes. There's no arbitration agreement between my client and his client. There's nothing like that. It's by virtue of the industry that she works in, she is obligated to mandatorily go to arbitration on issues involving securities. And that is how she gets her license. It's how she becomes registered. Where does that obligation come from, a contract or something else? It comes from the licensure. It comes from the licensing. In securities, you can have a Series 6 or a Series 7, and part of that when you get licensed, depending on the level of licensure, is your obligation to go to that. And the whole reason is that the SEC doesn't want to see all of these lawsuits all over the place burdening the courts. They're trying to jam it through this prism of thinner arbitration.  So would you argue that by taking up her license or applying to her license, that would be a written agreement to arbitrate under the terms of FINRA? Yes, correct. There is no question, and I believe it was admitted, and it's referenced in the judge's decision in the findings of fact, that both HBEC and Valentine, so HBEC is the broker over the top and Valentine is the representative, agreed that they were members of FINRA. That is not in dispute on any level that I know about, which raises a second question that I'm going to come back to this gateway issue, which is my client files the arbitration with FINRA. We then get hit with two federal lawsuits, one from Valentine and one from HBEC, which was her broker. So it's broker and then representative. Those cases then get consolidated together in front of Judge Pearson. We go through this three-day preliminary injunction hearing. It gets denied across the board. Not a single element is found. HBEC want to make our procedural mess even worse. HBEC hasn't appealed. So HBEC lost in the preliminary injunction and has submitted that it's going to have to go to FINRA. They're saying they don't. Now look at these two diversion paths. But now is that arbitration also stayed? It's all one. Well, but what you said, the HBEC part, they could be separated. We tried to get them to proceed. FINRA would not go through. It could be, but you're saying that FINRA stayed both of them. Correct. They are air-related because they're both stayed. Got it. I'm sorry to talk over you, Judge Boggs. You bring it against both because it's the broker who holds the ticket for the representative, which is Valentine. So look at the divergent paths we've got now. So we've got them losing in district court. FINRA stayed. One of the two parties appeals. The other one doesn't. We can't get FINRA to go forward on any of them because this appeal is pending. The gateway issue that all of the judges have picked up on is the Federal Arbitration Act precludes exactly this. I am embarrassed as a lawyer that I didn't catch this when we did the initial briefing and that it came from the court and from the clerks. You had a second chance. What's the best case that supports your position? A friend on the other side said there's really no cases either way about whether this dispute like this or anything involving FINRA is subject to the FAA. Do you have a case that says that? Do we have a case like that linear? It answers the question. It doesn't have to be our circuit. It's our circuit that makes it easy, but any court. Yeah. There was O-N equity or on equity. It was O period, N period equity, which was a district court case that dealt with this exact issue. It was not an appellate court case and required it to go forward. But I don't know that anybody has hit that bright line other than this court in preferred care because preferred care is the case from five years ago from this court which said, again, Federal Arbitration Act. I know that that's a nursing home. It's not the FINRA case you want, but prohibits appeals from interlocutory orders. The case you mentioned was an NASD case and NASD became FINRA? NASD, that caused me some confusion a million years ago when this case was going through the injunction. NASD is FINRA. It was the old name of FINRA. It was the National Association of Securities Dealers. It's now Financial Institutes, whatever it is. It is the same thing. So that case is directly on point and dealt with the exact same issue. The gateway issue is... Sorry, so when you say that case is on point... O-N equity. Federal appellate court... That is a district court case. But in a sense, the key here is should a federal appeals court decline jurisdiction when an attempt to appeal is made? Yes. And you would sort of think that there would be situations where indeed an injunction is denied, somebody tries to do what the gentleman over here has done quite carefully, and then the appellate court says, denied. So it's a little surprising that this hasn't come up, I would guess. My... First, I don't remember when the change in the law came in with the FAA, so I don't recall how old it is, if it's 10 years old or if it's 2 years old, so that's on me. Because, again, I didn't know about it, and I was thinking it's under Title 28, and then we see the FAA in that section, and you're like, well, it promotes that purpose. The reason you may not see a lot of cases on it, though, regardless of the age, is that what's the harm in going to arbitration? Why do you want to waste and throw all this money and effort and years of delays? I mean, if you're not supposed to arbitrate, which is his position, and if he thinks he got an error in the district court, which he thinks has plausible reasoning, you don't want to go to arbitration and spend that kind of money. Appellate courts, federal appellate courts, that's kind of a cheap date compared to a week-long or two-week-long financial hearing, isn't it? I would respectfully disagree with that. Sure, oral arguments, we get 15 minutes, but all of the work in the district court, and there was discovery, and there were thousands of pages of documents, it was dealt with like a full trial just at the preliminary injunction stage. It was days in court. They're not waiving anything by going to arbitration. We agreed on the record, the case law says it, it's from this district, whether it's the Vestex case, you're not waiving anything. You can go there and say, we shouldn't be here, this isn't a customer, clearly Judge Pearson, in a detailed opinion, said that's absolutely false, that we were a customer, citing to the Lorenzo case from the U.S. Supreme Court that says disseminators are liable, you don't have to be the maker of the statement, that even a BIT participant is liable because that's your customer, that you don't have to open an account, make a commission, that tangential business dealings make them a customer. But setting that aside, that that's the law, going to the arbitration, you're not waiving that, right? You can say, this person isn't my customer. He can make his contract argument, he's making it the wrong way, it's not the contract with my client, it's whether she has a contract through the SEC to go to FINRA arbitration for all of her disputes, which she does. Everything she does is subject to FINRA arbitration? Not everything under the sun, no. If she hits you with your car, it wouldn't be subject to FINRA arbitration, but this was subject to FINRA arbitration. He makes it... Opposing counsel paints it as... Can her accounting clients sue her, arbitrate under FINRA? It would depend what she was doing for them. Let's say she was doing accounting. She just, like, filed a tax return for them? Yeah. No. She's doing financial statements for them. Yes. Everything relates to that business. Is she subject to FINRA? Again, it depends upon the work that she is doing and the hat that she is wearing. If it was a tax return, I would agree. No. And so, let's say the client who wants to arbitrate it knows she has a FINRA relationship and tries to arbitrate, and she goes to the district court, and the district court says, no, well, you're under FINRA, it's time to arbitrate. Shouldn't she be able to appeal that if she's just doing his taxes? She had her... I would say no under Title IX because that's... What does that law, what does that statute mean? You get your singular bite at the apple at the district court, and then you've got to go to your arbitration. If they don't like the decision at the end of the arbitration, they can appeal that. They're not... It's not binding, non-appealable arbitration in FINRA. They act like it's, you know, it's just some horrible place they're going to go and they're going to get stuck with the decision. They're going to be dealing with people who deal with securities on a daily basis, on a panel of arbitrators that are from that field. And they go through all of that, and then there's a motion to confirm, say she loses, and then it comes up to us, and then we say, oh, I'm sorry you spent all that money, but this is not subject to arbitration. And then... And then there's a trial in the district court. I mean, is that... Does that make sense? It does and it doesn't. It's... I guess it's... Under your hypothetical, Your Honor, it's theoretically possible, but it's... In a weird way, it's no different than what Judge Pearson did here. It's we keep going sideways as opposed to just addressing the issue. The arbitrator, like Judge Pearson, could say they are a customer, they aren't a customer, they are or they aren't. Judge Pearson found that they were. The arbitrator could say... Is that collateral? Would that be a matter of collateral estoppel that they've already litigated the issue of customer? In the arbitration? No. Judge Pearson said that they're a customer. So now, they collaterally stopped in the arbitration from arguing that your client's not a customer? No. Because Judge Pearson stated in her ruling in the case law from this circuit holds that so long as you raise your right... I don't think you could sit silently by and let it go, but so long as you defend your right and say we object to have been deemed a customer, you're preserving your rights. In an effort to try to get this to arbitration so we're not two years later and still dealing with this singular issue, we went on the record and we said, we'll agree. You're not waiving any rights. You preserve all rights and rights of appeal. Let's simply move the ball as opposed to dealing with these fringe, tangential issues. Did your friend on the other side have to move for a final judgment in this case? In other words, preliminary injunction's denied. Can't appeal that. Could he have then asked the district court to enter a final injunction and brought those issues up to us now? He didn't do that, I don't think. Yeah, he didn't. Wow, that's a great question. Would that be a final decision with respect to an arbitration that is subject to this title? Yeah, I think... The FAA lets you appeal those. I think the answer's yes, but I don't know. I'm sorry, you said you think the answer's yes? Yeah. That's when I asked him about, I sort of thought of him as the sole aggressor here, but then he said you had filed counterclaims, all of which would remain alive than whatever we did on this injunction business, so it wouldn't be final, would it? Correct, and that's where I was just about to go with Judge Riedler, which is... Didn't want to pre-dermit your argument. Because everybody's trying to preserve their rights, we had to file the counterclaims in this in our answer saying, we believe it's subject to mandatory FINRA arbitration, but you don't want to waive your right to think that that claim is somehow gone. So the case would not have been able to get to the final point probably without trying the counterclaims? You could have dismissed those, but then you run the risk of us saying... Correct. It's a law school exam, right. So if the arbitrators here, all these wise men, you pointed out how wise they are, says, sorry, sir, not a customer, you lose in the arbitration, then you proceed in district court under whatever theories you have. Is that what happens? I believe we would have to appeal it out of the arbitration, just like they would have to appeal it out of the arbitration. Or accept it. Or accept the decision? Yeah, I think they could give up at some point. That's what Judge Boggs was saying. You accept it and you go to district court. Correct. Yeah, that's theoretically possible, right. But because even if she's not a customer under FINRA, you have some other arguments as to why you should get some money? When she said accept the arbitrator. In my hypothetical, the arbitrator has said, Mr. Witkowski's right. She's not a customer. Get out of here. We have nothing to do with this. The question is, can you then continue in federal district court? You have other theories or the same theory? Well, again, it's the 10b-5 issue on disseminator and the broker supervising the representative. I wish I had a great answer for that question because, again, it's... I hope it doesn't come up. Because that claim was in to preserve the right. But then you're saying if we got a bad decision in the arbitration, do we then appeal that out? And what does that do to the other claim? When you even say appeal it out, usually you don't appeal arbitration. You move to enforce. And depending on the decision on the enforcement, you appeal that. Well, under FINRA, my understanding is... Unless I missed something. I'm sorry, sir. I said go ahead. Under FINRA, there is an appeal right to federal court. Okay, maybe I missed that. And I'm just trying to remember in my head, does it go back to the district court, which would then allay all of our issues because we're coming right back to Judge Pearson, or does it come up to the Sixth Circuit? I don't recall off the top of my head. But there is an appeal right, which is referenced in all of your guys' cases. The Vestek's case, Quinta... There was another one. Hold on one second. Wilson Davis was the one that this court hit it exactly on the head, which is you go to arbitration, you deal with your issues, and then you can come back to this court. Do I have one minute to wrap up? We're over time? Okay. These are interesting questions, and it's an interesting issue. But what we're here on the appeal on is, does the court have jurisdiction? The answer is no. The statute is very clear. This court has dealt with it in preferred care, at least in a different context, but on the arbitration issue. The issue on the preliminary injunction and temporary restraining order, they lost on every single element. This is not a coin toss preliminary injunction, which was, yeah, you might have a likelihood of success, but you haven't, we're not sure there's an irreparable injury. This was Judge Pearson going down the board under a clear and convincing evidence standard and saying, there is no likelihood of success based upon the Sixth Circuit cases in Wilson and Vestek's, went down again and said, there is no irreparable injury, and that's kind of the critical thing for arbitration. What is unjust or harmful about going to an arbitration? I understand Judge White saying, well, it could spend a lot of money and time. It's been two years since the preliminary injunction hearings began. Two years. The arbitration is going to be faster than that and presumably cheaper than that. Going to the arbitration causes no harm. Most pointedly in Judge Pearson's decision, I think it's section 41 of her findings of fact, she goes, none of the plaintiffs, HBEC or Valentine, any of their witnesses or any of their experts said that there was an injury. That's the critical point for an injunction is that I will have irreparable injury. None of them testified to that. More to the point, and then I will leave you, Your Honors, unless you have more questions, is their own expert, Dave Polakaitis, said the issue of arbitrability and these issues that we've been dealing with here can be dealt with and addressed by the arbitrator. So nothing is lost and nothing is waived. Any other questions, Your Honors? What is your strongest case on saying that you were a customer? Just on that one issue. Wilson, Vesteks, and Lorenzo. Because I think Lorenzo from the Supreme Court is the one that says you don't have to be the maker, you can be a disseminator, you can be a bit participant. And the two cases, Wilson and Vesteks from this circuit, dealt with the issue of, because the people who deal with securities are kind of, they're trying to dance around that issue. So they poke, they don't want to go to thinner arbitration, so for some reason that's foreign to me. And they poke around the edges with customer and you didn't open an account. And what they're saying is, if you're making statements to people that relate to this industry, you are potentially liable. Thank you. Thank you, Your Honors. In response to the likelihood of success on the merits, I'd like to point out that we tried this case. We tried it in Stark County. We got a verdict in under an hour. The verdict came in, a defense verdict on all claims against Ms. Valentine. So I believe the likelihood of success on the merits on all the claims are very strong because the securities claims were in fact, were argued and presented to the jury. The court didn't have the jurisdiction, but in terms of the nature of fraud and misrepresentation, those allegations were presented and argued and they failed. In terms of the arbitration itself, I mean, if someone consents to arbitration, whether there's an arbitration agreement or not, you're bound by it. So if you elect to invoke arbitration, you've effectively made an election of remedies. And the idea that you can now then pursue alternative causes of action in state court and federal court when you've selected your course of action seems to be a little bit disingenuous. We have continuously denied jurisdiction in the FINRA arbitration from the very beginning. If we were to consent to arbitrate the issue of arbitrability in FINRA, we would lose the right to proceed in federal court. We would not have the right to do that. But our position is this, that there is no agreement here to arbitrate. FINRA applies to customer relationship, and I think if you look at the court's decision, the court did not apply any real test of what is a customer. The court simply concluded, without applying a test, without applying any of the circuit tests that have been developed, she simply concluded there was a relationship here that sufficed to generate FINRA. And my position is if you look at the record and the evidence that's there, there's no evidence whatsoever that supports a customer relationship between them. Carolyn Valentine was adverse to HWLC from the very beginning. When asked to provide information, she requested authority from Mr. Ranieri to do so. Everything she produced was under the authority of Mr. Ranieri. She owed Mr. Ranieri a duty of confidentiality, and as a professional CPA, she could not reveal information that otherwise might have been required to be disclosed. Her relationship was strictly as a CPA. She served in that capacity the entire time. She never served as a FINRA advisor, and the idea that she should be subject to FINRA arbitration by someone who is adverse to her is a complete anomaly. The Supreme Court has affirmatively said you are not obligated to arbitrate unless you've agreed to arbitrate. I'm sorry, just wanted to finish that thought. Let's assume that you're right and that let's assume that at the end of this day, though, you did have to arbitrate, and the arbitrator finds out in your favor. We had raised with your adversary the question of what happens then. Is that the end of it? Can he come back to district court? Can he appeal that? No. Under your view, what happens then? Let's say we let him go to arbitration, you win in the arbitration, that she's not a customer. Then what? Is that the end of it? This is binding arbitration. It's binding. The only right we have to appeal is that this is not subject to arbitration. We can't appeal on the idea that we don't like it or it exceeds it. Our only defense is this is not subject to arbitration. I'm saying suppose you win on that before the arbitrator, what can he do? Nothing? Well, if the arbitrator concludes it, I think it's binding because we've submitted the issue to the arbitrator. And that's true for me, too. If I submit it to the arbitrator and I lose, I lose. I can't go back to federal court. So it's decided they're not customers of your client, we will not entertain this arbitration. Then what? Then it goes back to federal court or state court, which is where we were and we won. This idea that they can sue us three different locations is an anomaly that I was not completely aware of. Back to federal district court, but he would have to have some theory other than being a customer? If he comes back to district court, he can sue us like a normal third party would sue an accountant for malpractice, which is what they originally did and what they did in state court was file a suit against us like we were an accountant that committed malpractice and they were injured as a third party. There's no argument that they had some kind of, what do you call it, a contractual relationship, a privity or even modified privity, which is required. Just out of curiosity, was that particular claim dismissed on the pleadings or did the jury decide it? The jury decided. We went to verdict. It was fraud, misrepresentation, promissory estoppel, and professional negligence. I'm talking about the professional negligence one. That all went to the jury. That went to the jury. Correct. Can I ask you another question? Go ahead. On the jurisdiction point, your friend mentioned the Eighth Circuit case on equity sales. That seems to me maybe the most on-point decision. I didn't read on equity sales that he's read it. You'd have to go back and take another look at it. It seemed like there was an arbitration agreement in that that was subject to dispute. Well, it was an NASD arbitration. I think if you look at the facts, it's not on point. One of the issues, right, was whether the plaintiff was a customer? That's certainly an issue, yes. But Wilson Davis applies the customer test, and the judge in Northern District of Ohio split the claims. She found that some of them were subject to arbitration because there was a client relationship, a customer relationship that existed, but she denied some of the claims that arose when there was not a customer relationship. Wilson Davis splits it, and the judge, I think it was Judge Vaughn, Patty Vaughn, agrees that some of the claims, if they were not a customer at this point in time, became a customer, and these claims are subject to arbitration. I thought the Ahn-Davis case was about whether there was a duty to arbitrate. Is the duty to arbitrate different than contractual obligation to arbitrate? Is it FINRA to arbitration different? I don't know. It's my general sense of the case whether there was a duty to arbitrate. It is, and the court found on some there was a duty, on some services. The 8th Circuit used the word, I think they used the word duty. You're saying contract. I'm trying to understand if the difference between dutiful obligation and a contractual obligation is different. I don't really think they are. Well, it is when it comes to arbitration because you have to have normal circumstances. Arbitration is contractual. It's not assumed. And arbitration is imposed on Ms. Valentine by FINRA as to customer relationships. Again, I think if you look at Wilson Davis, the decision from the Northern District, the judge does a very good job of identifying what a customer is and why their claims were viable as a customer for certain ones but not viable for others. She does a very nice job of segregating who a customer is and who is not. And it applies to a single person. So I think it's a good analysis. Thank you. Thank you both very much. The case will be submitted.